UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **NANCY SMITH FRAHM,** *et al.*, | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | **CIVIL ACTION NO. V-11-56** |
| **REFUGIO COUNTY, TEXAS,** *et al.*, | § § § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendants Refugio County, Texas ("the County") and Officers Phillip Jaramillo ("Jaramillo") and John Bland's ("Bland") (collectively "Defendants") Motion to Dismiss for Failure to State a Claim (Dkt. No. 21), to which Plaintiffs Nancy Smith Frahm, *Individually and as Representative of the Estate of Jeffrey Charles Frahm*, and Kathleen Frahm, *as Next Friend for AJF*, (collectively "Plaintiffs") have responded (Dkt. No. 31), and Defendants have replied (Dkt. No. 32). Having considered the motion, response, reply, record, and applicable law, the Court is of the opinion that Defendants' motion should be **GRANTED.**

**I. Factual and Procedural Background**

According to the facts as set forth in Plaintiffs' Second Amended Original Complaint, on October 13, 2009, Jeffrey Charles Frahm ("Frahm") was arrested for driving while intoxicated and taken to the Refugio County Jail. (Pl. 2d Am. Orig. Compl. (hereinafter "Compl."), Dkt. No. 16, ¶ 8.) After Frahm was arrested, his wife, Plaintiff Nancy Smith Frahm ("Mrs. Frahm"), contacted the Refugio County Sheriff's Department and informed them that Frahm had a seizure disorder and needed to be given medication. (*Id.*) Mrs. Frahm was informed that no medication was found with Frahm during his arrest. (*Id.*) Mrs. Frahm then told the unidentified individual

1

with whom she spoke that since no medication was found, Frahm needed to be supervised for his medical condition. (*Id.*)

Later, while in jail, Frahm complained to Defendant Jaramillo that he needed medical attention by stating that he "needed to know 'what he needed to do to see a doctor.'" (*Id.* ¶ 9.) Frahm also told Jaramillo that he had high blood pressure and needed his medication. (*Id.*) Jaramillo did not get Frahm medical attention, but instead left Frahm's cell. (*Id.*) Neither Jaramillo nor Defendant Bland performed cell checks or provided Frahm with supervision, despite allegedly having full knowledge of his medical condition. (*Id.*)

Later that day, Jaramillo and Bland returned to Frahm's cell and found Frahm lying on the floor, unresponsive. (*Id.*) After a failed attempt at reviving Frahm, Jaramillo and Bland instructed the control room to call emergency medical services. (*Id.*) Frahm was then taken to the hospital where he was pronounced brain dead due to severe head trauma, which Plaintiffs believe happened after Frahm fell while having a seizure in his cell. (*Id.*)

On October 5, 2011, Plaintiffs filed suit under 42 U.S.C. § 1983 alleging that Defendants' failure to provide Frahm with adequate supervision and medical care following his arrest caused his death. (Dkt. No. 1.) Defendants now move to dismiss the majority of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### III. Analysis

Under the heading "First Claim for Relief—§1983," Plaintiffs allege that "Defendants, jointly and/or severally deprived Jackson[1] of his Fourth Amendment and/or Eighth Amendment rights, privileges, and immunities . . . applied to the states through the Fourteenth Amendment" by "acting with deliberate indifference to the rights of Jackson by failing to provide medical care to Mr. Frahm in connection with his known and obvious serious medical needs." (Compl. ¶ 12.)

---

1. It is unclear who Jackson is, or how his rights were deprived by Defendants. The Court imagines this is a typo resulting from Plaintiffs' counsel cutting and pasting this section of the Complaint from one used in another case.

### A. Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures, and the Fifth Circuit has recognized that such constitutional violations may lay the foundation for a § 1983 claim. *See* U.S. CONST. amend. IV; *see also United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). The Supreme Court has further held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . ." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Here, Plaintiffs do not provide any clarification regarding their Fourth Amendment claim. They do not allege that Frahm was subjected to an unreasonable search, that he was injured because Defendants used excessive force against him, or that his arrest was otherwise unlawful. As such, any claims Plaintiffs attempt to assert under the Fourth Amendment are dismissed.

### B. Eighth Amendment

Pretrial detainees and convicted prisoners "look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). While "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment . . . [t]he constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Because Plaintiffs allege that Frahm was a pretrial detainee, and not a convicted prisoner, Plaintiffs' claims under the Eighth Amendment are dismissed.

## C. Fourteenth Amendment

In order to state a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must identify a constitutionally protected life, liberty, or property interest and then set forth facts showing that government action resulted in deprivation of that right. *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991). Since a state can punish convicted prisoners but cannot punish pretrial detainees, "a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Hare*, 74 F.3d at 639 (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 105—06 (1976)). This includes indifference manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104—05 (internal footnotes omitted).

### 1. Claims against the County

#### a. Custom or Policy

A governmental entity may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, to state a § 1983 claim against a governmental entity such as a county, a plaintiff must allege that: "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred [by a person acting under the color of state law]; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children v. G.B. Gunn*, 81 F.3d

5

521, 532–33 (5th Cir. 1996). *See also City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411–12 (1997); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). An offending policy may be an official policy adopted and promulgated by the county, or a "persistent, widespread practice of [county] officials or employees" that is "so common and well settled as to constitute a custom that fairly represents [county] policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Finally, a plaintiff must also assert that the county's inadequate policy or custom was adopted with deliberate indifference to the constitutional rights of its citizens. *City of Canton*, 489 U.S. at 387–91.

Here, Plaintiffs allege that the County is liable for Jaramillo and Bland's failure to provide Frahm with adequate supervision and medical care

> because they sanctioned the custom, practice[,] and/or policy or procedures of, *inter alia*, 1) ignoring the serious medical needs of those entrusted to their care based either on expedience or ignorance to the consequences, 2) failing to discipline those persons whom are found to have ignored the medical needs of such individuals, 3) failing to adequately supervise and/or observe their inmates/detainees/arrestees, 4) failing to provide adequate instructions for the immediate hospitalization and/or treatment of inmates/detainees/arrestees, 5) failing to provide adequate staff to handle emergency situations stemming from the medical needs of inmates/detainees/arrestees, and 6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs.

(Compl. ¶ 14.) Plaintiffs further allege that the County "had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers." (*Id.* ¶ 15.) "In the alternative," Plaintiffs allege that the County is liable "for failing to adopt clear policies outlining

6

the criteria for determining, relaying[,] and/or treating the medical needs of inmates/arrestees/detainees." (*Id.*)

The Court finds that Plaintiffs' allegations regarding the County's "ignore the medical problems" policy are insufficient to state a claim under § 1983. Although Plaintiffs describe the County's alleged policies, they fail to set forth any facts in support of these allegations. *Spiller*, 130 F.3d at 167. Plaintiffs also fail to identify any other individual in the County's custody besides Frahm who was denied proper medical treatment, in order to show a custom or pattern of behavior. Although Plaintiffs allege that the County had constructive knowledge of the customs and/or policies described above, Plaintiffs do not allege that the Refugio County Sheriff or any other identifiable policymaker had actual knowledge of the alleged "ignore the medical problems" policy in order to attribute knowledge of this policy to the County. *See James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (recognizing that "[u]nder Texas law, sheriffs are 'final policymakers' in the area of law enforcement for the purposes of holding a county liable under § 1983"). Finally, Plaintiffs fail to allege that the County's "ignore the medical problems" policy served as the moving force behind the alleged violation of Frahm's constitutional rights, as required under *Meadowbriar*, 81 F.3d at 533.

### b. Failure to Train

Plaintiffs next allege that the County "is liable for the inadequate training of their deputies/officers under § 1983." (Compl. ¶ 16.)

A "custom" rising to the level of official policy may, in appropriate cases, encompass allegations that a policymaker failed to act affirmatively, including a failure to adequately train a subordinate. *Connick v. Thompson*, — U.S. —, 131 S.Ct. 1350, 1359 (2011). In order to state a claim against a county under § 1983 for failure to properly train and supervise, a plaintiff must

7

allege that she was deprived of a constitutional right as a direct and proximate result of an official policy or custom attributable to the county. *Pineda*, 291 F.3d at 332. A plaintiff must also allege that the constitutional violation was a highly predictable consequence of such a failure or failures. *Brown*, 520 U.S. at 409. Finally, a plaintiff must allege that the county's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 131 S.Ct. at 1360 (quoting *Canton*, 489 U.S. at 395). The Fifth Circuit recently set forth the following standard with regard to establishing deliberate indifference in actions involving failure-to-train claims:

> [T]here must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in de facto respondeat superior liability.

*Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (internal citations, quotations, and alterations omitted).

Here, Plaintiffs allege that the County "fail[ed] to provide adequate instructions for the immediate hospitalization and/or treatment of inmates/detainees/arrestees." (Compl. ¶ 14.) Plaintiffs further allege that "[l]iability attaches to [the] County because their failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact." (*Id.* ¶ 16.)

The Court finds that Plaintiffs' allegations against the County are insufficient to state a claim for failure to train under § 1983. Not only do Plaintiffs fail to set forth any facts showing a "pattern of similar constitutional violations by untrained employees," Plaintiffs fail to identify a

single individual in the County's custody besides Frahm who was allegedly denied proper medical treatment by an untrained employee. *See Porter*, 659 at 447. Plaintiffs also fail to allege that the constitutional deprivation in this case was a highly predictable consequence of the County's failure to adequately train its deputies or officers. *See Brown*, 520 U.S. at 409. In fact, Plaintiffs do not set forth any facts showing a causal connection between the County's alleged failure to train their deputies or officers and Frahm's death.

In sum, although Plaintiffs' Second Amended Original Complaint includes allegations of custom or policy, deliberate indifference, failure to train, and constructive knowledge, "[a] district court [is] not required to accept [a plaintiff's] conclusional allegations or legal conclusions as true simply because the complaint used the correct technical 'buzz words.'" *Kinzie v. Dallas County Hosp. Dist.*, 106 Fed. App'x 192, 195 (5th Cir. 2003) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). Accordingly, Plaintiffs' § 1983 claims against the County are dismissed.

### 2. Claims against Individual Defendants for Failure to Supervise or Train[2]

Plaintiffs also seek to hold Jaramillo and Bland liable under a similar theory of failure to properly supervise and/or train their subordinates.

"A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Porter*, 659 F.3d at 446 (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

---

2. Plaintiffs also allege that Defendants Jaramillo and Bland are individually liable under § 1983 for failure to provide Frahm with adequate medical care. However, Defendants explicitly state that they do not move to dismiss those claims. (Dkt. No. 21 ¶ 6.)

9

Here, Plaintiffs allege that Jaramillo and Bland are "liable for failing to supervise and/or failing to train, and/or acquiescence in unconstitutional behavior by subordinate[] . . . deputies/officers." (Compl. ¶ 13.) Plaintiffs further allege that Jaramillo and Bland's "failure to supervise and train in regard to similar situations additionally amounted to gross negligence or deliberate indifference." (*Id.*) "In fact," Plaintiffs claim, "despite the existence of numerous problems associated with the admittance of persons with medical needs to the Refugio County Jail, [Jaramillo and Bland] continued to be deliberately indifferent to the possibility of injury and/or death and such indifference led to the exact situation complain of herein." (*Id.*)

The Court finds that Plaintiffs' allegations against Jaramillo and Bland are insufficient to state a claim for failure to supervise and/or train under § 1983. First and foremost, glaringly absent from Plaintiffs' Complaint is any allegation that Jaramillo and Bland are supervisors. Instead, Plaintiffs merely allege that each individual is an "officer employed by the Refugio County Sheriff's Department." (Compl. ¶¶ 5 & 6.) Plaintiffs do not identify who the subordinate deputies/officers Jaramillo and Bland allegedly failed to train are, what training they should have received, or how they violated Frahm's constitutional rights.

Plaintiffs also fail to set forth facts showing that Jaramillo and Bland acted with deliberate indifference. Although Plaintiffs allude to "numerous problems associated with . . . persons with medical needs" and "failure to supervise and train in regard to similar situations," Plaintiffs do not set forth any facts in support of these conclusory allegations. The Fifth Circuit "[has] stressed that a single incident is usually insufficient to demonstrate deliberate indifference;" however, Plaintiffs' Complaint is limited to just that—the single incident involving Frahm. *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382—83 (5th Cir. 2005); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006)

10

("We have frequently held that supervisor liability under section 1983 requires a showing of the supervisor's deliberate indifference to the known or obvious fact that such constitutional violations would result and [t]hat generally requires that a plaintiff demonstrate at least a pattern of similar violations.") (citations and internal quotations omitted). Finally, Plaintiffs allege that Jaramillo and Bland's actions "amounted to gross negligence *or* deliberate indifference." (Compl. ¶ 13 (emphasis added).) However, to state a claim under § 1983, a plaintiff must allege that the constitutional deprivation in question was not the result of negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828—29 (1994); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992).

Accordingly, Plaintiffs' § 1983 claims against Jaramillo and Bland for failure to train are dismissed.

**IV. Conclusion**

For the aforementioned reasons, Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 21) is **GRANTED**, and all of Plaintiffs' claims are **DISMISSED**, with the exception of those against Defendants Jaramillo and Bland under the Fourteenth Amendment for failure to provide adequate medical care.

It is so **ORDERED**.

**SIGNED** this 16th day of May, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE