UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| NANCY SMITH FRAHM, *et al*, § § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 6:11-CV-56 |
| § | |
| REFUGIO COUNTY, TEXAS, *et al*, § § | |
| Defendants. § | |

## **MEMORANDUM AND ORDER**

Jeffrey Charles Frahm became unconscious in his cell while being detained at the Refugio County Jail for a drunk driving arrest, and shortly thereafter passed away. Frahm's widow and the mother of his minor child brought this lawsuit against the County and individuals working at the jail who had contact with Frahm. The only claim that remains before the Court is one for deliberate indifference to medical needs asserted against Phillip Jaramillo of the Refugio County Sheriff's Department. Jaramillo seeks summary judgment, arguing there is no evidence of a constitutional violation for deliberate indifference and that he is entitled to qualified immunity.

I. **BACKGROUND**[1]

On the morning of October 13, 2009, Frahm was arrested by DPS Trooper Blake Chapman for driving under the influence after driving off the road and into a ditch twice. Frahm twice refused to take a breathalyzer test, but after arriving at Refugio County Jail, he agreed to have a blood sample taken. The result showed a blood alcohol level of .23, almost three times the legal limit.

When asked about any medical conditions, Frahm informed Chapman that he had suffered a concussion at work "approximately 3 weeks" prior and that he had high blood pressure. Docket Entry Nos. 54-1 at 4 (Report of Investigation); 59-8 (DWI Interview with Legal Warnings Form). Chapman also reported that Frahm's wife, Nancy, told him over the phone that Frahm was making up the story about the concussion at work, but that she had hit Frahm in the head with a door. In addition, she said Frahm "never went to a doctor's office and was not diagnosed with a grade 4 concussion like Frahm had claimed to me throughout the morning." Docket Entry No. 54-1 at 4. Nancy further informed Chapman that Frahm was an alcoholic and he had seizures related to his alcoholism so he needed to be watched. Docket Entry No. 59-2 at 10:24–11:3, 12:8–23. Chapman observed that at the jail, "Frahm was very cognitive. He was aware of his surroundings and making very

---

[1] Given the summary judgment posture, the following recitation of the facts resolves all credibility determinations in Plaintiffs' favor.

reasonable choices regarding decisions on lawyers, fees, and financial situations." Docket Entry No. 54-1 at 4.

Chapman brought Frahm back to the jail at about 10:45 a.m., where Frahm was held in a detox cell until he was formally booked around 1:21 p.m. by Correctional Officer Jaramillo. During the booking process, Jaramillo completed a medical intake, indicating that Frahm told him he had a possible concussion and was taking ibuprofen to treat it. Docket Entry No. 59-7. When asked if he would like some ibuprofen, Frahm indicated he would, so Jaramillo gave him some. Docket Entry No. 52-2 at 2. However, when "asked if he suffered from any medical conditions [or] serious injuries," Frahm stated "no." *Id.* Frahm never mentioned a seizure disorder to Jaramillo, nor did anyone else inform Jaramillo about Frahm's seizures or Nancy Frahm's comments about his alleged concussion. *Id.*; Docket Entry No. 54-1 at 49–53.

Frahm was then moved to Holding Cell 1, which had a wall with a glass window that could be seen from the control room. Around 3 p.m., Jaramillo heard a beep on the control panel indicating that Holding Cell 1 was requesting help. He answered the call and heard Frahm say he wanted "to know what he had to do to see a doctor." Docket Entry No. 54-1 at 54 (Jaramillo's Statement for Inmate Incident History Investigation).[2] Jaramillo went to Frahm's holding cell to

---

[2] There is a minor discrepancy between Jaramillo's statements as to when Frahm made this

communicate more easily with him, and Frahm repeated his request for the procedure to see a doctor. *Id.* When asked by Jaramillo what his reason was for wanting to see a doctor, Frahm again told Jaramillo that he was given a "grade 4 concussion" a couple weeks ago and was prescribed ibuprofen for it. *Id.* After advising Frahm about the jail's procedures for administering ibuprofen, Jaramillo asked him if he was in pain or felt seriously ill. Frahm responded that "he simply wanted to check on the status of his concussion that he sustained over a week ago," and Jaramillo advised him "that unless he felt seriously ill or injured that his statement was more along the lines of a general complaint." *Id.* Jaramillo informed Frahm about the jail's procedures and schedule for inmate doctor visits, and then very slowly "asked him one more time, [do] you really feel the need is urgent to the point you feel you need immediate medical attention or do you just want a regular check for the status of your previous concussion meaning you are in no pain right now." *Id.* There is no evidence that Frahm responded by requesting immediate medical attention. Because Jaramillo did not consider this conversation a request to see a doctor, he did not report it to his supervisor. Jaramillo noted that throughout the day, Frahm showed "no signs of pain, illness, or fatigue . . . [and]

---

request about the procedure to see a doctor. In his affidavit, Jaramillo states that Frahm made the request the while he was still in the detox cell, *see* Docket Entry No. 52-2 at 1, whereas in the incident report and his deposition, he said it was while Frahm was in the holding cell. *See* Docket Entry Nos. 54-1 at 54, 49.

actually stood up with his arms folded and crossed while observing normal jail functions" from his cell. *Id.* at 54–55.

Around 5:00 that afternoon, dinner was served to all detainees in their cells, including Frahm. At about 5:35, trustee Enrique Guerrero was picking up trays from dinner and noticed that Frahm was passed out on the floor. Guerrero immediately notified Jaramillo, who went to Frahm's aid. Jaramillo observed Frahm lying on his back on the floor of the cell, making a loud snoring sound as if he were unconscious. Jaramillo called for assistance, and Officer Bland quickly arrived to help. They determined Frahm was unresponsive, and immediately requested that EMS be called. While waiting for EMS, they rolled Frahm on his side to prevent choking. EMS arrived at about 5:43 pm and took over. Frahm was transported to Refugio Memorial Hospital and then transferred by helicopter to a hospital in Corpus Christi. He subsequently died without ever regaining consciousness. The coroner's report lists his cause of death as blunt head trauma, *see* Docket Entry No. 59-5 at 1, but Dr. Martinez, Plaintiffs' expert witness, believes that bleeding in Frahm's brain prior to his fall to the ground was more likely his fatal injury. Docket Entry No. 52-8 at 4–5.

Plaintiffs originally brought claims against multiple defendants, including Refugio County and other individuals, but all the claims except for those against Defendants Jaramillo and Bland were dismissed at the Rule 12 stage prior to this

case being reassigned from a different judge. *See Frahm v. Refugio County, Tex.*, 2012 WL 1805329 (S.D. Tex. May 16, 2012). Both Jaramillo and Bland then filed this summary judgment motion, after which Plaintiffs agreed to dismiss the claims against Officer Bland. *See* Docket Entry No. 60. Thus, the only remaining claim before the Court is against Officer Jaramillo for deliberate indifference under the Fourteenth Amendment.

**I.    STANDARD OF REVIEW**

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

**II.   ANALYSIS**

The constitutional right of a pretrial detainee to basic needs such as medical care and protection from harm arises from the Due Process Clause of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The Fifth Circuit distinguishes between challenges by pretrial detainees

to "conditions of confinement," such as complaints about the number of bunks in a cell, and "episodic acts or omissions" by government officials. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). The standard for evaluating constitutional liability for episodic acts or omissions—the type of challenge in this case—is the same as the Eighth Amendment deliberate indifference standard for prisoners serving a sentence: whether a government official "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. Deliberate indifference to a serious illness or injury includes prison officials "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976) (internal footnotes omitted).

The Fifth Circuit has described deliberate indifference as "an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires more than negligence. Thus "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). Instead, a plaintiff must produce evidence showing that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs." *Id.* The Fifth Circuit has defined a serious medical need as one "for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citations omitted); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (defining a serious medical condition as "a condition of urgency, one that may produce death, degeneration, or extreme pain").

Plaintiffs contend that Officer Jaramillo is liable because he was deliberately indifferent to Frahm's serious medical needs, and that this delay in medical care was a proximate cause of his death. There is no evidence that Jaramillo was ever informed about Frahm's seizure disorder, thus the only basis for a deliberate indifference finding would relate to the concussion.[3] But even as it relates to a claim based on Jaramillo's knowledge of a supposed concussion, the Court concludes there is no evidence to support a finding that Jaramillo had subjective knowledge of a substantial risk of serious harm to Frahm. While Frahm told Jaramillo several times that he had sustained a concussion a few weeks earlier and asked him about the procedure to see a doctor, the evidence establishes that Jaramillo did not conclude that the concussion posed a substantial risk of serious

---

[3] Jaramillo argues that Plaintiffs' Second Amended Complaint identifies only Frahm's alleged seizure disorder as his serious medical condition, making no mention of the concussion. *See* Docket Entry Nos. 54 ¶ 4 n.2; 63 ¶ 2. Plaintiffs respond that the notice provided in the pleading is sufficient to encompass a claim based on Jaramillo's knowledge about the concussion and, in an abundance of caution, move for leave to amend to provide an express reference to the concussion. The Court will read the complaint as encompassing the concussion claim given its conclusion that the evidence is not sufficient to support even a claim based on that medical need.

harm to Frahm at that time. *See Olabisiomotosho*, 185 F.3d at 527 (noting that defendants' mere knowledge of plaintiff's medical condition—asthma—was not sufficient to infer their knowledge of a substantial risk of serious harm to plaintiff from that condition).

First, during booking, Frahm answered that he did not suffer from any "medical conditions [or] serious injuries." Docket Entry No. 52-2 at 2. When Frahm wanted to know how to see a doctor, Jaramillo quickly responded and engaged in a detailed inquiry with Frahm about whether he needed immediate medical attention. Based on Frahm's responses and behavior, including that "he simply wanted to check on the status of his concussion that he sustained over a week ago," Jaramillo determined that Frahm did not need immediate medical attention. Docket Entry No. 54-1 at 54. That is, Jaramillo did not subjectively conclude that Frahm faced an immediate risk of serious harm. That this judgment ultimately proved to be false in hindsight does not alter the Court's analysis of Jaramillo's subjective knowledge. *Cf. Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

Second, both Jaramillo's and Chapman's observations of Frahm throughout his time at the jail indicated that Frahm had clear judgment and did not exhibit

physical symptoms showing a serious medical need. Jaramillo thus had less of a basis for concluding Frahm had a serious medical need than did the officers who observed an asthmatic women "wheezing and experiencing shortness of breath"— evidence that the Fifth Circuit still found insufficient to support a deliberate indifference claim, *see Olabisiomotosho*, 185 F.3d at 527 (affirming summary judgment for two officers because "[n]one of these alleged facts indicate[d] [an asthmatic woman's] medical needs were serious while [the two officers] were responsible for her," even though she informed the officers that she had asthma, requested her inhaler, and "was wheezing and experiencing shortness of breath" while walking with them), and far less basis than existed when a prison physician was aware of a prisoner's unconscious state, which the Fifth Circuit found sufficient to support a finding of deliberate indifference, *see Bias v. Woods*, 288 F. App'x 158, 162–63 (5th Cir. 2008) (affirming denial of qualified immunity for a prison physician who was aware of a prisoner's unconscious state but delayed his care by transferring him to another facility because the prisoner's medical condition was "open and obvious" and "an exceptional circumstance obviously requiring immediate medical attention"); *see also Gobert*, 463 F.3d at 349 (finding that a prison physician was aware of a substantial risk of serious harm from a prisoner's open leg wound based on his testimony about the risk of infection from open wounds).

Plaintiffs argue that Jaramillo's deposition response agreeing that "a concussion can be a serious type of injury that can cause problems" creates a fact issue concerning Jaramillo's subjective knowledge of the risk of harm. Docket Entry No. 59-4 at 2. But the seriousness of a medical condition, whether it be asthma or a concussion, and its associated risks can vary over time. *See, e.g.*, *Olabisiomotosho*, 185 F.3d at 527 (distinguishing between the seriousness of plaintiff's medical condition—asthma—at different times during her two-day long detainment, and concluding that her condition was not serious while she was under the care of two particular officers, but that there was a fact issue as to the seriousness of her condition after she left their supervision). The dangers posed by a concussion depend, among other things, on how long ago the concussion occurred and whether the individual has suffered other head trauma. Therefore, Jaramillo's general statement is not sufficient on its own to create a fact issue about whether he knew on October 13 that Frahm's report of a previous concussion created a substantial risk of serious harm.

Because the Court concludes that no reasonable jury could find that Jaramillo subjectively knew of a substantial risk of serious harm to Frahm, the Court does not need to reach Jaramillo's other arguments, such as to whether Jaramillo responded to the risk with deliberate indifference or whether Jaramillo is entitled to qualified immunity.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 52).[4] Final judgment will enter by separate order.

**SIGNED** this 14th day of January, 2014.

                                                                 _____
                                                                    Gregg Costa
                                                            United States District Judge

---

[4] The Court also **DENIES** Defendant's Motions to Strike Evidence from Plaintiffs' Response Briefs (Docket Entry Nos. 61, 62) because—even considering the challenged evidence—the Court finds that summary judgment is warranted.